**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**LEWIS T. BABCOCK, CHIEF JUDGE**

Civil action No. 05-cv-01934-LTB-PAC

STRING CHEESE INCIDENT TICKETING, LLC d/b/a BASELINE TICKETING, a Colorado limited liability Company,

       Plaintiff,

v.

STYLUS SHOWS, INC., d/b/a THE SHAKEDOWN CAMPOUT & MUSIC FESTIVAL, a Florida corporation;
HAL ABRAMSON, individually;
PETER VAUGHN SHAVER, ESQ.,
HAVER & ASSOCIATES, an Oregon law firm and
JOHN DOES NOS. 1 THROUGH X.

       Defendants.

_____

## Order

_____

An Oregon attorney, Peter Vaughn Shaver ("Shaver") and an Oregon law firm, Haver & Associates, ("the Haver firm"), move to dismiss for lack of personal jurisdiction a complaint against them by a Colorado company, Baseline Ticketing ("Baseline"). Baseline asserts numerous causes of action against the Haver firm and Shaver, and against Shaver's client, Stylus Shows ("Stylus"), a Florida corporation that retained Baseline to help sell tickets for an ultimately unsuccessful concert venture in Oregon. For the reasons stated below, defendants' motion is GRANTED.

## I.  BACKGROUND

This case involves a dispute between a Ticketing Company and a Concert promotion company and its lawyers over a failed music festival. Baseline is a Boulder, Colorado company

that provides ticketing services for concerts and music festivals.  Stylus is a Florida company that

organizes and promotes entertainment events.  Hal Abramson ("Abramson") is the owner-

principal of Stylus. Shaver is an Oregon-based entertainment lawyer who represented Stylus in the

business transaction that is at the core of this dispute, the attempt to organize the "Shakedown

Music Festival" in Oregon. Shaver is of-counsel to Haver & Associates, an Oregon law firm

organized as a sole proprietor and owned by Kohel Haver.

Early in 2005, Stylus began planning the Shakedown festival, an outdoor music event in

North Plains, Oregon, to be held August 26 and 27, 2005. Stylus retained Baseline to promote the

festival and sell tickets nationally, starting about April 30, 2005. Baseline became concerned about

the concert's financial status when Stylus requested advances of ticket sales money in amounts

Baseline considered "extraordinary." Baseline made inquiries both to Abramson, and to Shaver, as

Shakedown's attorney, about the financial status of the concert.  Baseline refused to pay

additional advances requested by Stylus until it received certain assurances about the viability of

the concert, and certain legal guarantees in the event of the concert's failure.

Neil Glazer ("Glazer"), Baseline's General Manager and attorney, had several telephone

and email contacts with Shaver in August of 2005 to address his concerns about the viability of

the concert. Most critical to this motion are email contacts and at least one telephone

conversation on August 9, 2005.  Glazer conveyed to Shaver his serious concerns about

Shakedown's ability to fund the concert, and that Baseline would be liable to its customers in the

event of a cancellation. In an email response, Shaver stated that "The company (Stylus) remains

committed to the production of the event and I assure you that the event is fully capitalized and

we are proceeding at full steam . . ." Glazer replied by email that he remained seriously concerned

about the status of the concert, that he was apprehensive about advancing additional funds, and that he would not advance the funds absent an indemnification agreement under which Stylus and Abramson would hold Baseline harmless for its losses in the event of a cancellation. Glazer also stated that if Shaver wanted Glazer to rely on Shaver's written representations about the status of the event, Glazer would incorporate them by reference in the final indemnification agreement and "hold you and your law firm responsible if it turns out to have been incorrect."

The Indemnification Agreement ("Agreement") was signed August 10, 2005, stating that Stylus would cover Baseline's losses or obligations in the event of cancellation, but not incorporating the August 9, 2005 email exchange by reference.

The concert was cancelled August 26, 2005, the day it was set to begin. Baseline asserts that it advanced to Stylus a total of about $172,000 and had to pay out over $188,000 in refunds to ticket holders.  Baseline was unable to get Stylus to repay it any of this money. On October 5, 2005 Baseline filed this complaint against Stylus, Abramson, Shaver, the Haver firm and ten John Doe defendants. The complaint makes numerous claims against the other parties but, most relevant to this motion, alleges negligent misrepresentation and promissory estoppel against Shaver and the Haver firm. On December, 20, 2005, defendants Shaver and the Haver firm filed this motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

## II.   STANDARD OF REVIEW

In a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). However, where, as in the present case, such a motion is decided on the basis of affidavits and without an evidentiary hearing, the burden on plaintiff is light. *Id.* "The plaintiff need only make a

3

prima facie showing that jurisdiction exists." *Id.* For the purposes of this motion I presume all uncontroverted allegations in the complaint are true, and I resolve factual disputes in conflicting affidavits in favor of the plaintiff. *Id.* However, I accept as true only plaintiff's well-pled facts, not mere conclusory allegations. *Id.*

### III.  DISCUSSION

In a diversity action, a federal court only has personal jurisdiction over a defendant if jurisdiction is consistent with the state's long arm statute and if jurisdiction does not offend the due process clause of the 14th amendment. *Benton v. Cameco Corp.,* 375 F.3d 1070, 1075 (10th Cir. 2004).  The Colorado long arm statute, Col. Rev. Stat. § 13-1-124, has been construed to extend jurisdiction to the full extent of the Constitution, so the jurisdictional analysis reduces to a single inquiry of whether jurisdiction offends due process. *Id.*

Personal jurisdiction comports with due process only where a defendant has minimum contacts with the forum state, and where those contacts are such that jurisdiction does not offend traditional notions of fair play and substantial justice. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1091 (10th Cir. 1998).  Minimum contacts may be established either under the doctrines of "general" jurisdiction or "specific" jurisdiction. *Id.* Baseline's argument here only involves specific jurisdiction.

In Colorado, establishing specific personal jurisdiction requires meeting a three-part test: "(1) the defendant must purposefully avail himself of the privilege of acting in Colorado or of causing important consequences in the state; (2) the cause of action must arise in the forum state from the consequences of defendant's activities; and (3) the activities must have a substantial enough connection with Colorado to make the exercise of jurisdiction over the defendant

4

reasonable." *Encore Productions, Inc. v. Promise Keepers,* 53 F. Supp.2d 1101, 1116 (D. Colo. 1999). Jurisdiction is only appropriate "if the plaintiff's claim arises out of or results from actions by the defendant himself that create a substantial connection with the forum state." *OMI Holdings,* 149 F.3d at 1091.

Baseline asserts that jurisdiction over Shaver is appropriate because Shaver transacted business in Colorado and because he committed tortious acts in Colorado. Baseline contends Shaver's Colorado contacts must be imputed to the Haver firm, because Shaver is of counsel to the Haver firm and so acted with its apparent authority. I will address each of these arguments.

A.      Engaging in Business in Colorado

Baseline contends that Shaver's email and telephone contact with Baseline in Colorado, as Stylus's attorney, justifies jurisdiction. Baseline has included in its filings eleven emails dating from August 2, 2005 to September 9, 2005.  While Baseline refers to "numerous" and "consistent" communications, it appears from Baseline's complaint and Glazer's affidavit that the emails of August 9, 2005 and a telephone conversation August 9, 2005 contain the statements that are the basis for Baseline's claims, and so are the contacts relevant to specific jurisdiction.

Citing two Colorado cases,  *Waterval v. District Court,* 620 P.2d 5, 8 (Colo. 1980) and *Scheuer v. District Court,*  684 P.2d 249, 251 (1984), Baseline argues that a non-resident attorney can be subject to Colorado jurisdiction for transacting business in Colorado on the basis of email, telephone and mail contacts. However, these cases differ significantly from the facts here.

In both of these cases the courts found jurisdiction over an out of state attorney sued by his own Colorado client, where the cause of action resulted from that representation. This is not

5

the case here, where Shaver represented a Florida client, not Baseline. Also, in both cases the

defendant attorneys had far more extensive forum state contacts. In *Waterval*, while the

defendant's representation of a Colorado client was "less than continuous," it had continued for

two years. *Waterval,* 620 P.2d at 9. Similarly, in *Scheuer*, the defendant attorney accepted

employment as an attorney for a Colorado client and had engaged in "continuous" representation

of that client.  *Scheuer,* 684 P.2d at 252.  Here, Shaver's total relevant contacts with Colorado

are eleven emails and a handful of phone calls, and only two emails and one phone call are the

basis of Baseline's claims against Shaver. Shaver, unlike the attorneys in *Waterval* and *Scheuer*

who purposefully availed themselves of the privilege of doing business in Colorado by

representing Colorado clients, did not reach into Colorado to do business, since his contact with

Baseline in Colorado was merely ancillary to his representation of a Florida client.

On this slender basis, personal jurisdiction cannot stand. Concluding that phone calls and

ten to twenty faxes and letters were insufficient to establish jurisdiction, the Tenth Circuit has

stated that "It is well established that phone calls and letters are not necessarily sufficient in

themselves to establish minimum contacts." *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1077

(10th Cir. 1995). Here, Baseline has nothing else. Finding that an out of state attorney's emails

and phone calls into Colorado on behalf of an out of state client constitute doing business in

Colorado would in effect mean that any time an attorney communicates into Colorado he should

reasonably expect to be haled into Court here. I decline to so extend personal jurisdiction.

B.     Committing Tortious Acts in Colorado

Baseline argues also that jurisdiction is appropriate over Shaver because he committed a

tortious act in Colorado. Commission of a single tort in Colorado is sufficient to confer Colorado

6

jurisdiction over a non-resident defendant. *Texair Flyers v. District Court*, 506 P.2d 367, 370 (Colo. 1973). Such jurisdiction is appropriate if either the tortious conduct occurred in Colorado or if the tortious act in a foreign state causes injury in Colorado. *Wenz*, 55 F.3d at 1507. Where the tortious act occurs out of state and the injury is alleged to be in Colorado, such an injury in Colorado "must be direct, not consequential and remote." *Wenz*, 55 F.3d at 1508.

Baseline contends that Shaver's misrepresentations regarding the financial status of the Shakedown festival justify specific jurisdiction. Shaver decided on his own volition to make representations to Baseline regarding the financial status of Shakedown. These representations, made voluntarily by Haver, are the basis of Baseline's claims of misrepresentation and promissory estoppel. Haver did not make these statements through some broad public medium that Baseline happened to receive in Colorado; they were made specifically and intentionally to Baseline in Colorado. Additionally, these statements had the effect in Colorado of persuading Baseline to dispense funds to Haver's client, Stylus, in Florida.

Shaver does not dispute that he intentionally had the communications with Baseline in Colorado, or that Baseline's allegations arise from these communications. Rather, Shaver argues that Baseline did not suffer a direct injury from the August 9, 2005 email because Baseline did not rely on Shaver's statements. Glazer stated in his August 9, 2005 email that if Shaver wanted Glazer to rely on Shaver's statements about the financial viability of the festival, Glazer would incorporate these statements into the Agreement. Shaver contends that since these statements were not incorporated into the Agreement, Baseline cannot show reliance on Shaver's statements. However, Glazer asserts in his affidavit that he continued working with Abramson only because of Glazer's assurances. In a motion to dismiss,  I resolve conflicting affidavits in favor of the

7

plaintiff. Moreover, Glazer's purported lack of reliance addresses only whether Baseline has

properly stated a claim, not whether personal jurisdiction is appropriate.

Shaver argues additionally that Baseline's injury was suffered, if at all, in Florida, not in

Colorado. Baseline advanced funds to Stylus's bank account in Florida, and Baseline's claim

derives from Stylus' failure to repay Baseline as required under the Agreement. Citing *Wenz,*

Shaver argues that Baseline's injury occurred where the funds were actually converted or

transferred, not where Baseline happens to be based. *Wenz,* 55 F.3d at 1508. *Wenz* involved a

dispute between a plaintiff investor who claimed that the defendant adviser had, without

authorization, disbursed funds from a London account owned by plaintiff, causing an economic

injury to the plaintiff in Colorado. *Id.* at 506.  The Tenth Circuit concluded that the injury to the

plaintiff occurred in London where the defendant had disbursed the funds, not in Colorado where

the plaintiff lived and suffered an economic loss. *Id.* at 1508. This kind of economic injury in

Colorado, by itself, does not justify jurisdiction if the tort itself occurred outside Colorado. *Id.*

This case is distinguishable from *Wenz* because the claim against Shaver is for

misrepresentation, not the improper transfer of funds. In *Wenz,* since all of the claims related to

the improper disbursement of funds from a London bank account, both the tort and the injury

occurred in London. *Id.* at 1507-1508. However, the tort of negligent misrepresentation occurs

where the plaintiff receives the communication. *Broadview Financial, Inc. v. Entech Management

Services Corp.,* 859 F.Supp. 444, 448 (D. Colo. 1994) citing *Classic Auto Sales, Inc. v. Schocket*,

832 P.2d 233, 236 (Colo. 1992).  In *Classic Auto Sales* a defendant auto-dealer sold the plaintiff

a classic car after misrepresenting some of its features. 832 P.2d at 234-235.  The Colorado

Supreme Court concluded that Colorado jurisdiction over the out of state dealer was proper

8

because the tort of misrepresentation occurred in Colorado where the plaintiff received the phone calls, even though the dealer never entered Colorado. *Id.* at 236. The tort occurred in Colorado and this by itself justified personal jurisdiction. *Id.*

I find this analysis applicable to the present case. Shaver's purported misrepresentation, once communicated to Baseline in Colorado, became complete and is considered to have been conducted in Colorado, just as in *Classic Auto Sales.* Shaver committed his tortious act in Colorado, and therefore Colorado jurisdiction is justified.

C.      Personal Jurisdiction over the Haver firm

Defendants contend, and Baseline does not dispute, that the Haver firm lacks any ties to Colorado. Its only link to this case is through its affiliation with Shaver. It is this affiliation, Baseline argues, that justifies jurisdiction because the Haver firm is vicariously liable for Shaver's actions under the theory of apparent authority.

Apparent authority is created "by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him." *People v. Manning,* 672 P.2d 499, 507 n.8 (Colo. 1983). "Apparent authority is created to protect third parties who, in good faith, rely upon their belief that an agency relationship exists between the apparent principal and agent. *In re Marriage of Robbins,* 8 P.3d 625, 628 (Colo. Ct. App. 2000). "Liability based upon apparent authority requires reliance by the third party dealing with the agent upon manifestations by the principal." *Master Commodities, Inc. v. Texas Cattle Management Co.,* 586 F.2d 1352, 1358 (10th Cir. 1978.) Where a third party detrimentally relies on an agent who acts with the principal's apparent authority, the agent's actions bind the principle. *Kuehn v.*

9

*Kuehn,* 642 P. 2d 524, 526 (Colo. Ct. App. 1981). *See also Rush Creek Solutions, Inc. v. Ute Mountain Tribe,* 107 P.3d 402, 408 (Colo. Ct. App. 2004) (holding an Indian Tribe liable for the acts of its officer where the plaintiff "relied to its detriment" on the officer's apparent authority.)

Whether apparent authority exists is "a factual determination." *In re Marriage of Robbins,* 8 P.3d at 628. However, where the facts relevant to apparent authority are undisputed, "fact finding is not required and the legal effect of those facts constitute a question of law." *Rush Creek Solutions,* 107 P.3d at 406.

In this case, the facts relevant to apparent authority are not disputed. Shaver states in his affidavit that he has been of counsel to the Haver law firm since 1999, that he is neither an associate nor a partner of the firm, that he pays his own insurance, that he finds his own clients and that he receives no compensation from Haver. Haver states in his affidavit that he shares an office with Haver but has no other ties to him. Baseline provides several pieces of evidence from the internet indicating that Shaver is associated with the Haver firm, but nothing that specifically addresses the question of apparent authority. In addition, the emails from Shaver to Baseline in the record all identify Shaver as affiliated with "Haver & Associates." The record contains no additional information regarding Shaver's relationship to the Haver firm.

In order to show that Shaver acted with the Haver firm's apparent authority, Baseline must make a prima facie showing that the Haver firm consented to have Shaver act on its behalf, that Baseline reasonably believed this relationship existed, and that Baseline relied on this agency relationship in its dealings with Shaver.

Baseline's facts do not make such a showing. Neither the record nor Baseline's complaint contain a fact or allegation showing that the Haver firm took some action to make Glazer believe

10

that Shaver was acting as the Haver firm's agent. The sole information Glazer had at the time was from Shaver, not from the Haver firm, and it indicated only that Shaver was with Haver & Associates, not that he was of counsel. Even assuming that Shaver's of counsel status would create a fact question regarding apparent authority, Baseline has not alleged that it knew from the Haver firm about Shaver's of counsel role during the August 9, 2005 transactions. Moreover, even if Glazer had some indication from the Haver firm that Shaver was of counsel, Baseline does not allege that it relied on Shaver's ties to the Haver firm when Glazer decided to send the funds to Stylus. Rather, Glazer's affidavit states "I trusted Shaver because he represented himself as a legal expert in entertainment law, and I trusted that as a fellow member of the bar . . . he would not misrepresent the facts to me." (Glazer Aff. ¶ 8). Neither Baseline's complaint nor Glazer's affidavit suggest that Glazer acted in reliance on Shaver's ties to Haver.

Baseline's burden to make a prima facie case for personal jurisdiction is light, but not non-existent. Baseline has failed to allege facts sufficient to show that it reasonably believed Shaver acted with the Haver firm's apparent authority when Shaver allegedly misrepresented facts to Baseline. This court therefore lacks personal jurisdiction over the Haver law firm.

D.     Fair Play and Substantial Justice

Even though Shaver's alleged tortious act is sufficient to justify Colorado jurisdiction, I still must analyze whether exercising Colorado jurisdiction is consistent with traditional notions of fair play and substantial justice. *OMI Holdings,* 149 F.3d at 1095. This requires analyzing several elements: "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared

11

interest of the several states in furthering fundamental substantive social policies." *Id.*

1.  Burden on Defendant

"While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *Id.* at 1096. Here, Shaver states that he is a resident of Oregon and practices law in Oregon. He has no ties to Colorado and has not visited the state in about seven years. I conclude that this factor disfavors Colorado jurisdiction.

2.  Forum State's Interest

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *Id.* at 1096. Important to this analysis is whether the law of the forum state applies. *Id.* Here, Colorado law will govern Baseline's tort claims against Shaver. I conclude that this factor favors Colorado jurisdiction.

3.  The Plaintiff's Interest in Convenient and Effective Relief

This factor focuses on "whether the plaintiff may receive convenient and effective relief in another forum." *Id.* at 1097. It is particularly significant where a plaintiff's recovery is greatly burdened by having to litigate in another state or because of another state's laws. *Id.* While there is no doubt some logistical burden on Baseline to litigate in Oregon, there is no reason to believe that Oregon cannot provide effective relief for Baseline's claims, and Colorado law will apply regardless of where this case is heard. This factor slightly favors Colorado jurisdiction.

4.  The Interstate Judicial System's Interest in Efficient Resolution of Controversies

This factor addresses "whether the forum state is the most efficient place to litigate the dispute." *Id.* Considerations relevant to this issue include the location of witnesses, where the

Case 1:05-cv-01934-LTB-KLM   Document 44   Filed 04/14/06   USDC Colorado   Page 13 of 13

underlying wrong occurred, which state's substantive law applies and the need to avoid piece-meal litigation. *Id.* Here, the Shakedown festival was to take place in Oregon, organized by a Florida company. The Haver firm and Shaver assert that the bulk of pertinent witnesses will be in those states. According to the Agreement, Colorado law will govern this case. Overall, this factor slightly disfavors Colorado jurisdiction.

       5.       The Shared Interest of the States in Furthering Fundamental Social Policies

This factor addresses whether the exercise of personal jurisdiction by Colorado affects the substantive social policy interests of other states. *Id.* While this case does not implicate any specific interest of the state of Oregon, defendants contend that granting Colorado jurisdiction undermines a broad public interest in effective legal representation, by potentially opening the door to requiring attorneys to defend against suits in foreign states for routine transactions with adversaries or other non-clients. This factor disfavors Colorado jurisdiction.

Overall, two of these factors favor Colorado jurisdiction and three do not, so the fairness considerations weigh against Colorado jurisdiction. Based on the foregoing analysis, I conclude that the exercise of specific jurisdiction over Shaver would offend traditional notions of fair play and substantial justice.

Therefore it is so Ordered that:

The motion by defendants Shaver and the Haver law firm to dismiss for lack of personal jurisdiction (Docket # 9) is GRANTED.

**DONE and ORDERED,** this   14th   day of April, 2006 at Denver, Colorado.

                                     s/Lewis T. Babcock
                                     United States District Chief Judge